1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DIANA K. THOMPSON,

                                Plaintiff,

     v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                             Defendant.

Case No. 3:09-cv-05792-RBL-KLS

REPORT AND RECOMMENDATION

Noted for February 18, 2011

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income ("SSI") benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and remanded for further administrative proceedings.

REPORT AND RECOMMENDATION - 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FACTUAL AND PROCEDURAL HISTORY

On September 8, 2005, plaintiff filed an application for SSI benefits, alleging disability as of September 1, 2005, due to cardio obstructive pulmonary disease ("COPD"), hepatitis C, incontinence, chronic asthma and cough, and arthritis. See Tr. 10, 89, 98.  Her application was denied upon initial review and on reconsideration. See Tr. 10, 55, 62.  A hearing was held before an administrative law judge ("ALJ") on September 23, 2008, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See Tr. 19-38.

On December 3, 2008, the ALJ issued a decision in which plaintiff was determined to be not disabled. See Tr. 10-18.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on October 23, 2009, making the ALJ's decision defendant's final decision. See Tr. 1; see also 20 C.F.R. § 416.1481.  On December 22, 2009, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See (ECF #1-#3).  The administrative record was filed with the Court on March 23, 2010. See (ECF #9).  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in failing to consider all of her functional limitations; (2) in evaluating the medical evidence in the record; (3) in assessing plaintiff's credibility; (4) in assessing her residual functional capacity; and (5) in finding her to be capable of performing other work existing in significant numbers in the national economy.  The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

REPORT AND RECOMMENDATION - 2

DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.     The ALJ's Consideration of Plaintiff's Functional Limitations

Plaintiff argues that while the ALJ properly noted she had "severe" impairments at step two of the sequential disability evaluation process,[1] he "failed to mention that [she] also has been diagnosed with reflex sympathetic dystrophy and peripheral sensory neuropathy," and "failed to consider all of the limitations caused by these impairments." (ECF #15, p. 14). However, "[t]he mere existence of" one or more impairments such as those alleged here, "is insufficient proof of a disability." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). In addition, plaintiff fails to

---

[1] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step of that process, the disability determination is made at that step, and the sequential evaluation process ends. Id. At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Plaintiff has the burden of proving her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); see also Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, though, is a de minimis screening device used to dispose of groundless claims. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).

REPORT AND RECOMMENDATION - 3

state – let alone show based on actual evidence in the record – with specificity what limitations, if any, she alleges were caused by the above two impairments.  As such, the undersigned finds no error on the part of the ALJ here.

II.    The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.  See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld."  Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility."  Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons."  Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Id.  The ALJ also may draw inferences "logically flowing from the evidence."  Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion."  Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can

REPORT AND RECOMMENDATION - 4

only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.    Dr. McGough

Plaintiff underwent a physical evaluation performed by Ben H. McGough, Jr., M.D., on August 3, 2004, who diagnosed her with "[a]rthritic changes in [her] tarsometatarsal joints with previous [left] foot sprain and some degree of reflex sympathy dystrophy." Tr. 379.  Plaintiff argues the ALJ's failure to mention or discuss this diagnosis or the evaluation report completed by Dr. McGough in general constitutes error.  As discussed above, however, the mere existence of an impairment is insufficient to establish disability or even the presence of significant work-

REPORT AND RECOMMENDATION - 5

related limitations.  Indeed, no mention of any such limitations was made by Dr. McGough, who went on to opine that plaintiff "should work hard to begin to bear weight on" her foot, and that "[h]er quickest recovery will occur if she will begin to use" it. Id.  Thus, again the undersigned finds no error has occurred here.

B.    Dr. Dietrich

Plaintiff further argues the ALJ erred in failing to mention the late January 2004 findings of Marlene Dietrich, M.D., that plaintiff had decreased pinprick sensation in her feet and hands, as well as tenderness in her shins. See Tr. 357.  This argument, though, fails for the same reason that plaintiff's other arguments discussed above do.  That is, she has pointed to no specific work-related limitations that have been linked by Dr. Dietrich to the above findings.  Plaintiff argues the ALJ further erred in evaluating the following opinion provided by Dr. Dietrich in a letter she wrote dated July 16, 2004:

> Diana Thompson completed her nerve conduction velocity studies today (right median and ulnar motor nerve studies).  These studies were normal.  Prior nerve conduction studies in 5/04 had shown mild bilateral median sensory nerve abnormalities, consistent with mild bilateral carpal tunnel syndrome, slightly worse on the right than the left.  Based on these findings, I would not consider the patient disabled from work.  However, she does have persistent severe pain and a sense of coldness in the distal left lower extremity since an injury in April.  I do not feel this patient is capable of working, currently, in light of her severe pain . . .

Tr. 351.

The ALJ addressed Dr. Dietrich's late July 2004 opinion as follows:

> Little weight was given to a letter written by Marlene Dietrich, M.D., on July 16, 2004 (Exhibits 8F/7 and 9F/1-2).  Dr. Dietrich reported that the claimant's nerve conduction studies are normal.  She noted that prior studies suggested mild carpel tunnel syndrome.  She concluded that these findings do not support a finding of disability.  However, she concluded that the claimant's "severe pain" prevents her from sustaining employment.  This finding is not based on objective evidence.  Dr. Dietrich concedes that test results do not support significant limitation.  It appears Dr. Dietrich's opinion is based on

REPORT AND RECOMMENDATION - 6

the claimant's subjective complaints.  She does not consider the claimant's conservative treatment or activities of daily living, which reflect a higher level of functioning.

Tr. 16.  A physician's opinion premised to a large extent on a claimant's subjective complaints may be discounted where the record supports the ALJ in discounting the claimant's credibility, which, as discussed in greater detail below, is the case here.  See Tonapetyan, 242 F.3d at 1149; Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).

Plaintiff argues the record does not support the ALJ in stating that Dr. Dietrich based her opinion primarily on her findings regarding the severity of plaintiff's carpal tunnel syndrome, when that opinion appears to have been based primarily on her findings concerning the severity of plaintiff's peripheral sensory neuropathy and possible reflex sympathetic dystrophy.  Even if this distinction had some relevance, plaintiff points to nothing in the ALJ's decision to show that this in fact is what the ALJ did here.  More importantly, however, plaintiff misses the point.  As clearly can be seen above, the ALJ expressly discounted Dr. Dietrich's opinion for the most part on the basis that it primarily relied on plaintiff's subjective complaints.  Also as is clear from Dr. Dietrich's letter, this seems to be exactly what she did.  There is no error here.

C.    Dr. Magaret

Plaintiff next challenges the following findings made by the ALJ:

A fair amount of weight was given to a consultative medical examination performed by Nathan Magaret, M.D., on January 19, 2006 (Exhibit 14F).  Dr. Magaret diagnosed the claimant with hepatitis C, chronic obstructive pulmonary disease and carpel tunnel syndrome.  He also noted that the claimant appeared to be "mildly intoxicated" at the examination.  He reported that her intoxication complicated the examination and made it difficult to assess limitations.  Nonetheless, he found the claimant is able to perform light work activity with the following functional limitations.  She is able to lift 20 pounds occasionally and 10 pounds frequently.  She is able to stand and/or walk 4 hours during an 8-hour day.  She can occasionally bend, stoop and crouch.  She has no environmental restrictions.  Dr. Magaret found no basis for manipulative restrictions and concluded that the examination and

REPORT AND RECOMMENDATION - 7

treatment record are inconsistent with a diagnosis for carpel tunnel syndrome. He also noted that the claimant appeared "unsteady" during the examination, which he attributed to alcohol abuse.  These findings are generally consistent with the record.  Moreover, these findings do not conflict with the claimant's conservative treatment history or activities of daily living.

Tr. 15.  Plaintiff argues the ALJ erred here by failing to explain why he did not "fully accept" the following additional findings made by Dr. Margaret:

- plaintiff's "bad pulmonary function" limited "her exercise tolerance and stamina";

- her hepatitis C "certainly could be a contributing to her fatigue and would make it difficult for her to stand and walk," but it was "difficult to assess" because of her "apparent intoxication"; and

- she "should use a cane for long distances or uneven terrain."

(ECF #15, p. 16); Tr. 397.

As for the first of these three findings, it is not clear exactly to what extent Dr. Magaret believed plaintiff's exercise tolerance and stamina was so limited, nor does that finding by itself indicate its potential impact on plaintiff's ability to perform work-related activities.  In any event, in the sentence immediately preceding that finding, Dr. Magaret opined that plaintiff "would be expected to stand and walk in an eight-hour day" for "four hours," which is for a longer period of time than the ALJ himself found. Tr. 397; see also Tr. 13.  Dr. Magaret went on to note that "a repeat evaluation when she has no alcohol in her system may permit her to stand and walk for a longer period of time." Tr. 397.  Dr. Magaret also found she could sit "without restrictions," and lift or carry "20 pounds occasionally and 10 pounds frequently" (Id.), which again is greater than or equal to that which the ALJ found plaintiff could do (see Tr. 13).

The statement regarding plaintiff's hepatitis C adds nothing to the specific work-related limitations Dr. Magaret found, and, as plaintiff herself points out, Dr. Magaret was not sure of this conclusion due to plaintiff's "apparent intoxication."  As such, this finding is not significant

REPORT AND RECOMMENDATION - 8

probative evidence the ALJ was required to expressly address.  Lastly, not mentioned by plaintiff

is the fact that Dr. Magaret qualified his statement regarding the use of a cane by also pointing

out that this was "difficult" to assess, because the examination "was limited by potential alcohol

use," a fact the ALJ noted and appears to have taken into account in assigning only "fair" weight

to Dr. Magaret's opinion. Tr. 15, 397; see Magallanes, 881 F.2d at 755 (specific and legitimate

inferences may be drawn by court from ALJ's opinion).

Plaintiff takes issue with the ALJ's statement that Dr. Magaret's findings did not conflict

with her conservative treatment history or activities of daily living, arguing the ALJ did not fully

discuss those findings, which, as explained above, the ALJ in fact did.  Plaintiff further argues

the ALJ failed to adopt any of the limitations described by Dr. Magaret, including her fatigue and

limited stamina.  This issue too has been addressed above and rejected, given the ALJ appears to

have adopted at least as restrictive limitations concerning the ability to stand, walk, sit, lift, and

carry than assessed by Dr. Magaret, and plaintiff has not pointed to no additional specific work-

related restrictions the ALJ failed to but was required to adopt, rather than to just the presence of

impairment-related symptoms.  Finally, in regard to Dr. Magaret, plaintiff argues that while the

ALJ found she only had mild COPD (see Tr. 12), pulmonary function testing conducted at the

time revealed "[s]evere obstructive airway disease" (see Tr. 392).  That testing, however, was

compromised by plaintiff's "VARIABLE EFFORT" and "[p]oor test reproducibility" (Tr. 392

(emphasis in original)), whereas all other testing in the record revealed, as found by the ALJ, at

most only "mild" disease (see Tr. 198-99, 217, 292, 317-18, 325, 334, 585).

D.    The State Agency Consultative Physical Evaluation

Plaintiff argues the ALJ erred in making the following findings:

. . . A fair amount of weight was given to a State Agency consultative physical
evaluation performed in February 2006 (Exhibit 17F).  The State Agency

1
2
3
4
5
6

> evaluator found the claimant is able to perform light work activity with the following functional limitations. She is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. She is able to stand and/or walk 2 hours during a fulltime 8-hour workday. She is able to sit 6 hours during a fulltime 8-hour workday. She should avoid using ropes, ladders and scaffolds. She can occasionally climb, balance, stoop, kneel, crouch and crawl. These findings are generally consistent with the record as a whole. Moreover, these findings do not conflict with the claimant's conservative treatment history or activities of daily living.

7
8
9
10

Tr. 15. In challenging the ALJ's findings, plaintiff first notes that the evaluation was completed by a non-examining, non-physician. While true (see Tr. 459), that evaluation was later affirmed by Robert Hoskins, M.D. (see Tr. 567). As such, the evaluation report constitutes evidence from a non-examining, consultative physician.

11
12
13
14
15
16
17
18
19
20

Plaintiff next argues the ALJ erred because he did not properly evaluate the evidence in the record from Drs. McGough, Dietrich and Magaret, and so could not properly have found the evaluator's findings to be consistent with the record as a whole. Again, though, the ALJ did not err in evaluating the medical evidence from these three sources, and so plaintiff's argument here is without merit. Plaintiff also argues that because the state evaluator's findings are not entirely consistent with plaintiff's daily activities, and do not fully reflect all of the limitations caused by her physical problems, the ALJ could not uphold those findings on this basis. Because plaintiff fails to provide any specifics as to exactly which inconsistencies she is referring to, here too the undersigned finds her argument to be without merit.

21
22

E.    Dr. Bowerly

23

Plaintiff next challenges the ALJ's following findings:

24
25
26

> A fair amount of weight was given to a psychological evaluation performed by Todd Bowerly, Ph.D., in May 2006 (Exhibit 21F). Dr. Bowerly diagnosed the claimant with a major depressive disorder (recurrent and moderate). He assessed the claimant's Global Assessment of Functioning [(GAF) score] at

REPORT AND RECOMMENDATION - 10

55[2], and noted deficits in concentration and attention.  The results of Dr. Bowerly's assessment are consistent with a State Agency consultative mental evaluation performed in June 2006 (See Exhibits 23F and 24F).  The evaluator found the claimant has the following functional limitations.  She is able to perform simple and some detailed/complex tasks.  She is able to interact with the public without "sustained consequence."  She can interact appropriately with co-workers and supervisors.  She can adjust to change, travel and cope with daily hazards.  These findings are consistent with Dr. Bowerly's assessment and the record as a whole.  Furthermore, these findings do not conflict with the claimant's activities of daily living.

Tr. 16.  Plaintiff first argues the June 2006 consultative evaluation was in actuality an assessment form completed by a consultative, non-examining psychologist, Thomas Clifford, Ph.D.  While true (see Tr. 549-65), this distinction has no bearing on the ALJ's ultimate disability decision – given that the ALJ did not err in evaluating Dr. Bowerly's evaluation as discussed herein – and therefore the ALJ's error was harmless. See Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ultimate disability conclusion).

Plaintiff goes on to argue that the ALJ failed to mention "many of Dr. Bowerly's most significant findings," including the following:

- plaintiff "exhibited evidence of motor and psychomotor slowing and fatigue over the course of testing";

- she "exhibited bouts of tearfulness during the evaluation"; and

- she exhibited "variable attention/concentration and variable memory functioning secondary to current emotional distress and the influence of multiple medical problems."

(ECF #15, pp. 17-18); Tr. 542, 545.  As with Dr. Magaret, plaintiff has failed to show that any of

---

[2]  A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007).  "A GAF [score] of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 34).

REPORT AND RECOMMENDATION - 11

these findings amount to actual, specific work-related limitations greater than those found by the ALJ.  Accordingly, the undersigned finds no error here as well.

      F.    <u>Dr. Clifford</u>

      Plaintiff argues the ALJ erred in failing to specifically discuss or state any reason for not adopting the moderate mental functional limitations Dr. Clifford checked off in Section I – titled "SUMMARY CONCLUSIONS" – of the mental residual functional capacity assessment form he completed in early June 2006.  <u>See</u> Tr. 563-64.  Instead, the ALJ looked to the explanation of Dr. Clifford's Section I "summary conclusions" that he provided in "narrative form" in Section III – titled "FUNCTIONAL CAPACITY ASSESSMENT" – of that same form.  <u>See</u> Tr. 16, 561, 565.[3] Plaintiff argues the ALJ was required to consider all the findings Dr. Clifford provided, including the limitations checked in Section I.

      The undersigned agrees with defendant, however, that pursuant to the directive contained in the Social Security Administration's Program Operations Manual System ("POMS"), "**[i]t is the narrative** written by the psychiatrist or psychologist **in [S]ection III** . . . **that adjudicators are to use as the assessment of RFC.**" POMS DI 25020.010(B)(1) (emphasis in original).[4]  It is true, as plaintiff notes, that the POMS "does not have the force of law." <u>Warre v. Commissioner of Soc. Sec. Admin.</u>, 439 F.3d 1001, 1005 (9th Cir. 2006).  Nevertheless, the POMS has been recognized as "persuasive authority" in the Ninth Circuit. <u>Id.</u>  Nor does the undersigned find or plaintiff provide any valid reasons for not following that directive in this case.

---

[3] Under Section III, Dr. Clifford wrote "See PRTF [Psychiatric Review Technique Form] this date, p. 13." Tr. 561, 565.  Plaintiff argues there is no indication from page 13 (Tr. 561) that Dr. Clifford considered or took into account all of the limitations he endorsed in Section I.  But this claim is entirely without merit.  As noted above, Section III directs the evaluator who is completing that form to explain in that section his or her "summary conclusions" – i.e., the limitations checked in Section I – in "narrative form." Tr. 565.  It requires no leap of logic to find Dr. Clifford did exactly that, except that he merely referred to the narrative comments he made in the PRTF, rather than having to repeat those comments in Section III.

[4] Available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010.

REPORT AND RECOMMENDATION - 12

Plaintiff argues the same POMS section provides that the functional abilities set forth in Section I are the mental abilities needed for any job, and that the psychologist completing an RFC assessment must complete Section I to ensure they have considered each of those mental abilities. See POMS DI 25020.010(B)(1), (2).[5]  But neither of these provisions is inconsistent with the requirement that the adjudicator – in this case the ALJ – look to Section III, and not Section I, for the psychologist's RFC assessment.  Plaintiff posits there is nothing to indicate Dr. Clifford actually considered and took into account all the limitations he checked in Section I, but it would be unreasonable to assume the opposite: that is, that even though all of those boxes had been checked, Dr. Clifford did not even consider or take them into account when he then went on to complete Section III.

III.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the

---

[5] Available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010.

REPORT AND RECOMMENDATION - 13

claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ found that plaintiff's "work history" was "a factor considered in the assessment of her credibility," and that the record showed that history to be "limited", thereby weakening it. Tr. 14.  This was a proper basis upon which to discount her credibility. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ properly found claimant's extremely poor work history and lack of propensity to work in her lifetime negatively affected her credibility concerning her inability to work).  Citing to two pages of the record (see Tr. 24, 541), plaintiff argues this is not a convincing reason, because the ALJ failed to acknowledge that she had primarily raised five children, including two sons with a genetic disorder that killed one of them, and that she cared for her sons' medical problems.  But those portions of the record fail to show any of plaintiff's responsibilities in this regard actually prevented her from working.  Plaintiff's argument here is thus without merit.

The ALJ also discounted plaintiff's credibility in part because she had "received only conservative and routine treatment," she had "not been hospitalized for any significant period of time," and she had "not received more aggressive forms of treatment." Tr. 15.  Plaintiff argues

REPORT AND RECOMMENDATION - 14

the fact that she has not been hospitalized for a significant period of time or received surgery in itself is not a convincing reason for discounting her credibility, but clearly evidence of receipt of only conservative treatment is. See Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to be suggestive of lower level of pain and functional limitation).

The ALJ further discounted plaintiff's credibility in part because despite alleging having pain in her hands and having difficulty with manipulation and handling, the record shows that nerve conduction studies failed "to reveal any significant abnormalities." Tr. 15.  A finding that a claimant's subjective complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  Plaintiff argues the ALJ failed to mention Dr. Dietrich's objective findings of tenderness and impaired sensation. See Tr. 357.  But again, the ALJ did not err in evaluating Dr. Dietrich's findings, nor does the mere existence of symptoms such as tenderness and impaired sensation alone establish significant work-related limitations.

The ALJ next discounted plaintiff's credibility in part for the following reasons:

. . . Despite her complaints of shortness of breath, she continues to smoke cigarettes. . . .

The record reflects the claimant has not complied with her medical treatment. The claimant has disregarded her physician's instructions to cease smoking cigarettes (Exhibits IF/5, 7F/2, and 30F/1/3).  In April 2006, she reported smoking two packs of cigarettes per day (Exhibit 19F/2).  These incidents of noncompliance suggest the claimant does not have a sincere interest in achieving medical and functional improvement.

Tr. 16.  Failure to assert a good reason for following a prescribed course of treatment "can cast

REPORT AND RECOMMENDATION - 15

doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  Plaintiff argues the ALJ failed to acknowledge her testimony at the hearing that she had cut back from smoking two packs of cigarettes a day to less than half a pack.  See Tr. 28.  But the weight of the evidence in the record shows she has not significantly cut back on the amount of cigarettes she has smoked over time, and that she has not followed the strong advice of her treatment providers that she stop smoking completely.  See Tr. 180-82, 184-87, 206-07, 226, 237, 273, 276, 356, 379, 382, 393-94, 396-97, 443, 466, 468-69, 472, 511, 521, 621.

The ALJ also discounted plaintiff's credibility in part because:

> The evidence suggests that the claimant's primary obstacle to sustaining
> employment is her alcohol abuse.  Her treatment history shows a significant
> history of alcoholism (See Exhibits 7F/42 and 20F/6/50).  In January 2006,
> she attended a consultative examination while under the influence of alcohol
> (See Exhibit 14F).  In April 2006, she reported drinking three to four
> alcoholic beverages per day (Exhibit 19F/2).  These activities, combined with
> the claimant's reluctance to cease smoking cigarettes, aggravate her
> symptoms.

Tr. 15.  Plaintiff argues this is not true, and therefore is not a convincing reason to reject all of her testimony.  The substantial evidence in the record, though, supports the ALJ's findings here. See Tr. 180, 183 ("smells like alcohol"; refused to get serum alcohol test), 184 (plaintiff deemed to be alcoholic), 186 (probable ongoing alcoholism), 206, 235 (plaintiff to be placed on "detox protocol"), 251 ("smells of alcohol"), 267-68, 393 ("obvious smell of alcohol in the room"; "did appear somewhat intoxicated at times"), 394 ("smells and acts intoxicated"), 396 ("smelled of alcohol," although "denied alcohol use."), 397, 432 ("drinks heavily."), 435 ("Probable chronic alcoholic gastritis."), 466 (drinking three to four alcoholic beverages per day), 471 (major barrier to further workup and treatment noted to be "ongoing heavy alcohol abuse"), 479 (taking alcohol to treat depression; "definite odor of alcohol" on breath), 519 ("drinking anywhere between 6 and 12 beers per day."), 521, 526 ("reeks of a large amount of alcohol."), 545 ("tendency to treat

REPORT AND RECOMMENDATION - 16

depression by using alcohol is a cause for concern"), 618.  Plaintiff points to no evidence in the record indicating the contrary.  As such, the undersigned finds no error here.

The undersigned does agree with plaintiff that the activities cited by the ALJ as a reason for discounting her credibility is not supported by the substantial evidence in the record, as that evidence fails to establish she "is able to spend a substantial part of . . . her day performing" them – at least at the level indicated by the ALJ – or that they necessarily "are transferable to a work setting." Smolen at 1284 n.7; see Tr 29-30, 32-33, 110-12, 127-32, 394, 543.  But the fact that one of the reasons for discounting plaintiff's credibility was improper does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record overall, as it is in this case. See Tonapetyan, 242 F.3d at 1148.

IV.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the

claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ assessed plaintiff with the following residual functional capacity:

> . . . **the claimant's residual functional capacity allows her to perform light work** . . . She is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. She is able to stand and/or walk no more than 2 hours during a fulltime 8-hour workday with normal breaks. She is able to sit no more than 6 hours during a fulltime 8-hour workday with normal breaks. She should avoid using ropes, ladders and scaffolds. She can occasionally climb, balance, stoop, kneel, crouch and crawl. She should avoid concentrated exposure to dusts, fumes, gases and odors. She should avoid constant use of the hands. She is limited to simple, routine and repetitive work.

Tr. 13 (emphasis in original). Plaintiff argues that because the ALJ failed to properly evaluate the medical evidence in the record and properly assess her credibility, the substantial evidence does not support the ALJ's RFC assessment. However, because, as discussed above, the ALJ did not err either in evaluating the medical evidence in the record or in overall determining plaintiff to be not fully credible, plaintiff's argument is without merit here. As such, the undersigned also rejects plaintiff's assertion that crediting that properly rejected evidence and testimony supports a finding that she is limited to at most part-time sedentary work.

V.    The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines. Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the

1   hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987);

2   Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony

3   therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See

4   Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the

5   claimant's disability "must be accurate, detailed, and supported by the medical record." Id.

6   (citations omitted).  The ALJ, however, may omit from that description those limitations he or

7   she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

8

9           At the hearing, the ALJ posed a hypothetical question to the vocational expert containing

10  substantial the same limitations that were included in the ALJ's assessment of plaintiff's residual

11  functional capacity. See Tr. 34.  In response to that question, the vocational expert testified that

12  an individual with those limitations, and who had the same age, education and work background

13  as plaintiff, would be able to perform other jobs. See 34-35.  Based on the vocational expert's

14  testimony, the ALJ found there were other jobs existing in significant numbers in the national

15  economy plaintiff could perform. See Tr. 17-18.

16

17          Plaintiff argues the ALJ erred in finding her to be capable of performing other jobs

18  existing in significant numbers in the national economy, because not all of his functional

19  limitations – as described by Dr. Dietrich, Dr. Magaret and Dr. Bowerly, and as she herself has

20  testified – were included in the hypothetical question the ALJ posed to the vocational expert.

21  But again, as discussed above, the ALJ did not err in evaluating the medical evidence from these

22  sources or in assessing plaintiff's credibility.  Accordingly, he was not required to include in the

23  hypothetical question any additional limitations.

24

25          On the other hand, the undersigned agrees the ALJ erred in failing to ask the vocational

26  expert whether her testimony regarding the jobs she identified plaintiff could do, was consistent

REPORT AND RECOMMENDATION - 19

with the information concerning those jobs contained in the Dictionary of Occupational Titles ("DOT").  The ALJ may rely on vocational expert testimony that "contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).  In addition, the ALJ has the affirmative responsibility to ask the vocational expert about possible conflicts between her testimony and information contained in the DOT. See Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704.  Before relying on evidence obtained from a vocational expert to support a finding of not disabled, furthermore, the ALJ must "elicit a reasonable explanation for any discrepancy" with the DOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1.  The ALJ also is required to explain in his or her decision how the discrepancy or conflict was resolved. SSR 00-4p, 2000 WL 189704 *4.

As discussed above, the ALJ limited plaintiff to standing and/or walking for no more than two hours in an eight-hour workday (see Tr. 13), and the vocational expert testified that plaintiff would be able to perform the jobs identified, but "with the ability to change positions between sitting and standing, or sitting primarily" (Tr. 35).  These limitations, though, are, as pointed out by plaintiff, inconsistent with light work, which requires "a good deal of walking or standing," for a total of approximately six hours in an eight-hour workday. See 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251*5-*6.  The DOT, furthermore, describes each of the jobs identified by the vocational expert that plaintiff could do as requiring the ability to perform light level work. See Tr. 35; DOT 211.462-010, 1991 WL 671840; DOT 211.467-030, 1991 WL 671853; DOT 739.687-030, 1991 WL 680180.

Although the ALJ expressly found in his decision that the vocational expert's testimony was "consistent with the information contained in the" DOT (Tr. 18), clearly as discuss above,

1   this finding is not supported by the substantial evidence in the record.  In addition, the ALJ did

2   not as required inquire of the vocational expert as to whether her testimony was consistent with

3   the information contained in the DOT.  Defendant argues that because no conflict was apparent

4   in this case, the ALJ had no duty to inquire.  First, as just explained, it is clear that the vocational

5   expert's testimony conflicted with the information contained in the DOT.  Second, SSR 00-4p is

6   quite clear that when a vocational expert testifies about the requirements of a particular job, the

7   ALJ first must ask that expert if his or her testimony conflicts with the information contained in

8   the DOT, and _then_ if the vocational expert's testimony appears to conflict with that information,

9
10   the ALJ is to obtain a reasonable explain for that conflict.[6] See 2000 WL 1898704 *4.  As such,

11   the ALJ here had a duty both to ask the vocational expert whether any conflict existed, and then,

12   because an apparent conflict did exist, elicit from the expert a reasonable explanation for it.  The

13   ALJ thus erred in failing to perform either task.

14
15   VI.   This Matter Should Be Remanded for Further Administrative Proceedings

16         The Court may remand this case "either for additional evidence and findings or to award

17   benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the

18   proper course, except in rare circumstances, is to remand to the agency for additional

19   investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

20   omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

21
22   _____
   [6] The relevant language of SSR 00-4p reads as follows:

23       When a [vocational expert] provides evidence about the requirements of a job or occupation, the
         adjudicator has an affirmative responsibility to ask about any possible conflict between that
24       [vocational expert] evidence and information provided in the DOT. In these situations, the
         adjudicator will:
25           Ask the [vocational expert] if the evidence he or she has provided conflicts with information
             provided in the DOT; and
26           If the [vocational expert's] evidence appears to conflict with the DOT, the adjudicator will
             obtain a reasonable explanation for the apparent conflict.

2000 WL 1898704 *4

REPORT AND RECOMMENDATION - 21

unable to perform gainful employment in the national economy," that "remand for an immediate

award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further

administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
> claimant's] evidence, (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made, and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled were such
> evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Because issues still remain with respect to whether plaintiff is capable of performing other jobs

existing in significant numbers in the national economy at step five of the sequential disability

evaluation process, this matter should be remanded to defendant for the purpose of conducting

further administrative proceedings at that step.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded

plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to

defendant for further administrative proceedings in accordance with the findings contained

herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

72(b), the parties shall have **fourteen (14) days** from service of this Report and

Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file

objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn,

REPORT AND RECOMMENDATION - 22

474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **February 18, 2011**, as noted in the caption.

DATED this 28th day of January, 2011.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 23